## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 CR 719** |
| | ) | |
| **LUIS CONTRERAS** | ) | |

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTIONS TO SUPPRESS

In this order, the Court addresses three motions to suppress filed by defendant

Luis Contreras.  The Court denies two of the motions and orders an evidentiary hearing

on the third.

**1.      Motion to suppress alleged post-arrest statements**

Mr. Contreras has moved to suppress statements that he is claimed to have

given in November 2008 after his arrest on an earlier firearms-related charge.  The

motion is based on law enforcement's alleged failure to provide *Miranda* warnings

before questioning him.

The record, however, shows that Mr. Contreras signed a written *Miranda* waiver.

Thus he can sustain his motion only by showing that the signature on the waiver is not

his or that the waiver post-dated his statements to law enforcement, *plus* that *Miranda*

warnings were not otherwise given before he made the statements to law enforcement,

or alternatively that he did not understand the waiver.

Mr. Contreras makes no attempt to establish the latter point.  On the former

point, it would be simple enough for Mr. Contreras to put the matter at issue if there was

a genuine basis for a dispute; he could simply submit an affidavit denying his signature

or contesting the timing of the form and denying that he was given *Miranda* warnings before he made the statements. But he has submitted no such affidavit. Rather, Mr. Contreras relies on three primary points: attribution to him of a statement that he had a GED certificate, which he says was untrue; purported differences among the signatures and initials on the waiver form and the form on which his statements were memorialized; and the claimed general lack of credibility of the government's case agent, DEA Special Agent Chris Labno.

None of these points, whether considered separately or together, is sufficient to call for an evidentiary hearing, let alone support suppression of Mr. Contreras's post-arrest statements. First, the fact that Mr. Contreras did not actually have a GED at the time does not support the proposition that the law enforcement agents are lying about the *Miranda* waiver. It is equally likely that Mr. Contreras misrepresented his GED to avoid embarrassment, or that the agent made an innocent mistake. One way or another, however, the allegedly incorrect statement does not cast any doubt on the validity or timing of the *Miranda* waiver. The Court also notes that because there is no basis to undermine Mr. Contreras's statement to law enforcement that he could read and write—a statement he is said to have made in conjunction with the GED comment—the absence of a GED would have no material bearing on the validity of his *Miranda* waiver.

Second, the Court does not agree with Mr. Contreras's contentions regarding differences in the handwriting in his signature and initials on the various forms. The claimed differences are more apparent than real and are not significant enough to suggest a forgery.

2

Third, even if Agent Labno's credibility might be subject to question, in the Court's view the fact that allegations or findings have been advanced regarding his believability in certain unrelated situations does not undermine the documentary record in this case, which—again—includes a written *Miranda* waiver signed by Mr. Contreras.

The Court also takes note of the fact that, when he pled guilty in state court in 2009 to a charge arising from the statement, Mr. Contreras effectively stipulated to having given a "Mirandized" statement regarding the matter to Agent Labno. *See* Gov't Ex. 5 at 7-8. This further undermines Mr. Contreras's contention that he gave the statement without being given *Miranda* warnings.

Given these considerations and Mr. Contreras's failure to provide supporting evidence that, if true, would be readily available to him—specifically an affidavit contesting that he signed the waiver, its timing, and/or the giving of *Miranda* warnings before his statement—the Court is unpersuaded that there are specific and nonconjectural facts showing a disputed issue of material fact pertinent to the motion to suppress. *See, e.g., United States v. Clark*, 935 F.3d 558, 568 (7th Cir. 2019). Thus no evidentiary hearing is needed. And because Mr. Contreras has failed to sufficiently call into question the timely giving of *Miranda* warnings, the Court denies his motion to suppress the November 2008 statements.

**2.     Motion to suppress fruits of October 23, 2018 searches**

Mr. Contreras was charged by criminal complaint in the present case on October 19, 2018 (a Friday), and a warrant was issued for his arrest on that date. He was arrested in his home in the early morning hours of October 23, 1918. The arresting agents conducted a "protective sweep" of the home when executing the warrant, and

they found a firearm in plain view in a room adjacent to the room where Mr. Contreras was arrested.  Based on this discovery, the agents then obtained a warrant to search the home, and evidence was seized (including the firearm) that the government will offer in support of one or more of the charges in this case.

In seeking suppression of the items seized, Mr. Contreras contends that law enforcement, rather than arresting him outside his home during ongoing surveillance after October 19 and before October 23, elected to wait until Mr. Contreras was inside his home so they could get a look inside the house under the guise of an entry to arrest, followed by a protective sweep of the home.  In other words, Mr. Contreras effectively contends that the execution of the arrest warrant inside his home was pretextual and that this should result in suppression of the evidence seen there and ultimately seized.

No evidentiary hearing is required on this motion, because even if one takes Mr. Contreras's "pretext" contentions as true, he has not offered a viable basis for suppression of the evidence.  A valid arrest warrant like the one issued here carries with it the authority to enter the home of the person named in the warrant to execute it, so long as the police have a reasonable belief that the person resides there and is currently present.  *See Payton v. New York*, 445 U.S. 573, 603 (1980).  And in conducting an otherwise appropriate entry into a home, the policy have authority to conduct a limited "sweep" of the premises "to assure themselves that the house in which [the] suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack . . . ."  *United States v. Contreras*, 820 F.3d 255, 268 (7th Cir. 2016).  The areas of Mr. Contreras's home viewed by the agents—including the area where they saw the firearm in plain view—

4

were within the appropriate scope of a permissible protective sweep.

The agents' subjective intentions in executing the warrant at Mr. Contreras's home as opposed to some other location are not, under any authority of which the Court is aware, relevant to the Fourth Amendment/suppression inquiry. Mr. Contreras has offered no authority in support of the proposition that the pretextual execution of an arrest warrant inside a suspect's home provides a basis for suppression of evidence seen there in plain view. And the Court is aware of no such authority. Indeed, the only on-point authority cited by either party, *United States v. Clayton*, 210 F.3d 841 (8th Cir. 2000), is to the contrary. This is consistent with the general rule that determination of a Fourth Amendment violation turns on an objective assessment of law enforcement officers' actions in light of the circumstances confronting them at the time, not on their subjective state of mind. *See Maryland v. Macon*, 472 U.S. 463, 470-71 (1985); *see generally Whren v. United States*, 517 U.S. 806, 813 (1996) (declining to preclude "pretextual" traffic stops).

For these reasons, the Court denies Mr. Contreras's motion to suppress the fruits of the October 23, 2018 searches.

### 3.     Motion to suppress suggestive identifications

Finally, Mr. Contreras has moved to suppress identifications of him by two alleged eyewitnesses to the murder charged in this case, which took place on February 18, 2018. The two witnesses are referred to as "Individual A" and "Individual B." Contreras contends that they were subjected to unduly suggestive or coercive tactics by law enforcement officers.

With respect to Individual A, the government responds that it does not intend to

5

offer his identification of Mr. Contreras regarding the murder. (It intends to ask Individual A to identify Mr. Contreras as a gang member with whom he was familiar, but Mr. Contreras's motion does not challenge this anticipated identification.) The motion is therefore moot with respect to the identification by Individual A.

The tactics allegedly used on Individual A, however, are cited by Mr. Contreras as relevant in attempting to show that Individual B was subjected to similar suggestive tactics. Specifically, Individual A told federal agents and a federal prosecutor that he "felt pressured by CPD" to identify Mr. Contreras as the shooter despite his expressed uncertainty. *See* Mot. to Suppress Identifications, Ex. B ¶ 3. The same Chicago police detective who conducted the procedure and interview that led to the purported identification, Detective Jorge Lopez, conducted the interview that appears to have led to Individual B's identification of Mr. Contreras.

Mr. Contreras also cites two other factors. First, he contends—and the documentary evidence supports—that of the photographs shown to Individual B, the photo of Mr. Contreras had a distinctly different appearance. Specifically, his face appears bright and well-lit (or over-exposed), as opposed to the other five individuals' photos, each of which was significantly darker. Second, Individual B, when first interviewed at a hospital after the shooting, provided no details regarding the men he saw during the shooting (other than that they were male, Hispanic, and wore black clothing); his identification was made at a police station months later, with precious little evidence regarding how he came to be at the police station (did he just show up? was he asked to come in? by whom? how did he get there? etc.), who came into contact with him, and what was said. The government points to video showing that the actual

6

photo array procedure that led to Individual B's identification of Mr. Contreras was conducted by a neutral administrator. This is certainly evidence that cuts against Mr. Contreras's claim of a suggestive or coercive process, but it is not enough to preclude the need for a hearing to flesh out the surrounding circumstances.

For these reasons, the Court concludes that an evidentiary hearing is required to resolve the motion to suppress Individual B's identification.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to suppress post-arrest statements [192] and his motion to suppress fruits of October 23, 2018 searches [194] and sets for an evidentiary hearing his motion to suppress suggestive identifications. As previously discussed with counsel, the Court sets the hearing for January 10, 2022 at 9:30 a.m. If the hearing cannot be concluded on January 10, it will be completed on January 12, 2022, starting at 9:30 a.m. The Court sets the case for a brief telephonic status hearing on December 23, 2021 at 9:45 a.m. to discuss with counsel whether the evidentiary hearing will be conducted in person, by video, or by a combination of the two. The following call-in number will be used: 888-684-8852, access code 746-1053. Counsel should also be prepared to discuss what witnesses will be required for the evidentiary hearing and should discuss this between the two sides in advance of the telephonic status hearing.

Date: December 20, 2021

MATTHEW F. KENNELLY
United States District Judge